UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
In re:

COMPLAINT OF MILLER MARINE
SERVICES, INC., as owner of the motor
vessel MEGAN T. MILLER, for Exoneration
from or Limitation of Liability

**MEMORANDUM OF DECISION**

12 CV 5680 (RJD) (JMA)

Petitioner.

------------------------------------------------------- x

DEARIE, District Judge.

Thomas Walker, a licensed boat pilot, and his wife Gail Walker (collectively, "Walker") are the plaintiffs in a personal injury action pending in the District of Connecticut. Miller Marine Services, Inc. ("Miller Marine") is the petitioner in this admiralty action, in which it seeks to limit its liability for the maritime incident in which Walker sustained his alleged injuries. Walker has asked the Court to dismiss Miller Marine's petition, asserting that venue is improper. In the alternative, Walker seeks transfer to the District of Connecticut. By order dated September 13, 2013, the Court denied the motion to dismiss, but granted the motion to transfer. (ECF No. 25).

Walker claims that he sustained injury just after midnight on September 16, 2011, when he fell off the deck of the Megan T. Miller while attempting to access a wharf at a port facility in New Haven, Connecticut. (Walker Compl., Dec. 14, 2012, ECF No. 1, D. Conn., No. 12-CV-1761). Earlier that evening, Walker had anchored a vessel on Long Island, and he returned to New Haven onboard the Abigail Miller, a launch owned by Miller Marine and crewed by John Handley and Dwayne Popkin. Upon arrival in New Haven, the Abigail Miller made fast alongside the Erin Miller, itself positioned alongside the Megan T. Miller, which was in turn

anchored directly next to a wharf leading to shore. The Erin Miller and Megan T. Miller – also owned by Miller Marine – thus blocked Walker's access to the wharf, requiring him to cross the decks of all three boats in darkness in order to reach dry land. After negotiating his way across the decks of the first two boats, Walker fell through an opening in the starboard gunwale of the Megan T. Miller into the water between that boat and the wharf. Receiving little help from Handley and Popkin, Walker nevertheless managed to make his way to a nearby ladder and pull himself up to the wharf. He suffered what he claims are significant injuries in this incident. He further claims that unsafe conditions on all three of Miller Marine's boats contributed to this injury, including inadequate lighting, missing safety equipment and the open unmarked starboard gunwale on the Megan T. Miller. He also cites the failure of Handley and Popkin to bring the Abigail Miller directly alongside the wharf or else escort him to the wharf. In his District of Connecticut lawsuit, Walker also brought claims against New NRB #3 Corp. ("NRB"), an owner of the New Haven facility, alleging that the unlit wharf was unsafe.

On November 16, 2012, Miller Marine filed its petition in admiralty pursuant to the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512 (the "Limitation Act"), seeking to cap its liability for injuries arising from this incident to the value of the Megan T. Miller. (Miller Marine Pet., ECF No. 1). As required by the Limitation Act, Miller Marine also posted a $515,000 bond with the court, an amount equal to the Megan T. Miller's appraised value. This Court then issued an order, dated December 11, 2012, approving the posted security, directing that notice of the suit be published to potential claimants, and enjoining any suits arising out of the incident. (Order, ECF No. 6).

Walker then filed his lawsuit in the District of Connecticut. His subsequent motion to dismiss Miller Marine's petition here in the Eastern District offers a novel argument as to why

2

venue is not proper, and also urges the Court to transfer the action for convenience. (Walker Letter Br., April 25, 2013, ECF No. 22). Both arguments necessitate a brief review of certain procedural and substantive doctrines applicable in limitation actions.

The Limitation Act allows a ship-owner to cap its total liability exposure to all injured parties for claims arising out of a maritime incident at the value of the vessel involved in that incident. 18 U.S.C. § 30505. Rule F of the Supplemental Rules for Admiralty and Maritime Claims sets forth the applicable procedures. Rule F is itself "sketched in outline" by the Limitation Act, which left the exact procedural rules "to be prescribed by judicial authority." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 447 (2001) (quoting Providence & New York S.S. Co. v. Hill Mfg. Co., 109 U.S. 578, 590 (1883)). Both Supplemental Rule F and the Act require the petitioner to post security with the court, which usually consists of a bond equal to the value of the vessel, for future distribution (if necessary) to the claimants. 46 U.S.C. § 30511; See also Lewis, 531 U.S. at 447.

Supplemental Rule F(9) governs venue, and sets forth four rules:

[1] The complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or, [2] if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. [3] When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced against the owner, the proceedings may be had in the district in which the vessel may be, but [4] if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district.

Rule F(9) also permits district courts to freely transfer mislaid cases to any proper venue in the "interest of justice." The transfer provision is modeled on 28 U.S.C. §§ 1404(a) and 1406(a).

Once suit is properly filed and the limitation fund established, the court provides notice of the proceedings to potential claimants and issues an anti-suit injunction. Lewis, 531 U.S. at

3

448. Critically, however, this injunction is almost toothless where, as here, the incident involves only a single claimant and the right of the petitioner to litigate its claim for limitation of liability is preserved. See Id. at 448-49. In such situations, the single claimant has an almost unfettered right to dissolve the injunction and proceed in another forum, owing partly to the so-called "savings-to-suitors" clause in 28 U.S.C. § 1333 and partly to the congressional purposes underlying the Limitation Act. See Id. at 450-51; Kreta Shipping, S.A. v. Preussag Int'l Steel Corp., 192 F.3d 41, 48-49 (2d Cir. 1999); Curtis Bay Towing Co. v. Tug Kevin Moran, Inc., 159 F.2d 273, 275-76 (2d Cir. 1947).[1] Single claimants typically invoke this right so that they may proceed in state court, a decision that requires them to file certain stipulations designed to preserve the petitioner's right to litigate his claim for limitation of liability. See In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V., 836 F.2d 750, 758 (2d Cir. 1988). But the Second Circuit also permits a single claimant to lift the injunction and proceed in federal court. See Kreta Shipping, 192 F.3d at 50 ("We cannot reconcile [petitioner's] argument that the concursus injunction need not be lifted except to permit claimants their common-law remedies in state court with Curtis Bay's requirement that the concursus injunction there be vacated in order to permit non common-law claims to be made in a federal forum.").

Once potential claimants have joined the suit, the district court holds what is known as a concursus: essentially a bench trial to assess whether the petitioning vessel owner is liable to the claimants, determine whether the vessel owner is entitled to limitation of liability, fix the final value of the limitation fund, and distribute the limitation fund among the claimants. See Lewis, 531 U.S. at 448; Dammers, 836 F.2d at 755. The vessel owner is not entitled to limit its liability

---

[1] Although the question of whether a court may lift the injunction or absolutely must do so is open to some debate, the distinction, as will be seen, is immaterial to the court's analysis of Walker's transfer motion. See Kreta Shipping, 192 F.3d at 50 n. 8 (noting that Curtis Bay appears to require the court to lift the injunction, but declining to reach the question).

4

if it had "privity or knowledge" of the conditions or circumstances leading to the claimant's injury. 46 U.S.C. § 30505. Privity or knowledge is a somewhat elastic concept, "often defined as 'complicity in the fault that caused the accident.'" Tug Ocean Prince, Inc. v. United States, 584 F.2d 1151, 1159 (2d Cir. 1978) (quoting Nuccio v. Royal Indemnity Co., 415 F.2d 228, 229 (5th Cir. 1969)). Privity or knowledge is thus not established by mere vicarious liability, but the concept does prohibit limitation of liability in situations where the vessel owner knew of a dangerous condition onboard the vessel or hired an incompetent crew. See generally In re Messina, 574 F.3d 119, 126-28. Therefore, privity or knowledge of the vessel owner may turn on facts substantially intertwined with the facts underlying the claimant's theory of negligence.

Where the vessel owner proves its lack of privity or knowledge, thus establishing its entitlement to limited liability, the so-called "flotilla doctrine" may nevertheless increase the total value of the limitation fund. That doctrine requires the petitioner to surrender the value of all the individual vessels involved in an incident – its entire flotilla – if the vessels were operating pursuant to a contract between the parties. See Deep Sea Tankers, Ltd. v. The Long Branch, 258 F.2d 757, 773 (2d Cir. 1958). Conversely, when the claimant brings claims solely in tort, the petitioner need only surrender the "offending" vessel or vessels. Id. (citing Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn E. Dist. Terminal, 251 U.S. 48 (1919)). When there are multiple offending vessels individually at fault in causing the claimants' injuries, the petitioner must surrender the value of each vessel. See Id. at 774.

Against this backdrop, the Court first turns to Walker's motion to dismiss for improper venue. Walker argues that, in the circumstances of this case, where all three vessels are at allegedly fault, the word "vessel" in the venue provision of Supplementary Rule F(9) actually means "vessels." Specifically, the "vessel" consists not just of the Megan T. Miller, but also the

Abigail Miller and the Erin Miller. Thus, because Miller Marine has only posted bond for the value of the Megan T. Miller, Walker claims venue is improperly laid in the Eastern District.

Walker reaches this conclusion by first invoking the flotilla doctrine to demonstrate that, within the Limitation Act (particularly 46 U.S.C. § 30505), "vessel" occasionally means "vessels," and that it does so on the facts of this case. Pivoting off that contention, Walker then invokes the long-established interpretive canon that courts should construe the same word in the same manner in different parts of the same statute or within a related statutory scheme. Using that canon, Walker argues that the Court should apply the same agglomerated definition of "vessel" to the venue provision of Supplementary Rule F(9). Accordingly, says Walker, Miller Marine could not establish venue unless it attached or surrendered the value of all three of its boats in the Eastern District as a single "vessel" at the time it filed suit.

There is nothing obviously wrong with Walker's syllogism as such. Although the Court must decline his invitation to depart from the "pure tort" exception to the flotilla doctrine, (Walker Letter Br. 4), Walker has stated a colorable claim that all three ships are at fault in causing his injuries, which (if proven) would require Miller Marine to add the value of its other two boats to the limitation fund. Thus it can be fairly said that, in this case, "vessel" may mean "vessels." Moreover, Rule F and the Limitation Act are at least somewhat related – the former "sketched in outline" out by the latter – and the courts do indeed try to imbue identical words with identical meanings in the same statutory scheme. See, e.g., Erlenbaugh v. United States, 409 U.S. 239, 243 (1972) ("The rule of in pari materia—like any canon of statutory construction—is a reflection of practical experience in the interpretation of statutes: a legislative body generally uses a particular word with a consistent meaning in a given context.")

6

However, the courts also strive to avoid illogical or absurd results. See, e.g., S.E.C. v. Rosenthal, 650 F.3d 156, 162 (2011) (citing United States v. Venturella, 391 F.3d 120, 126 (2d Cir. 2004)). Walker's syllogism collapses under the weight of its implications. The most striking implication is that Walker's position invites the Court to decide the merits of the case in order to assess venue. True, Walker has stated a colorable claim that all three boats are at fault. But he has not yet proven it, and the Court does not see how it may confidently identify which boats are at fault in a maritime casualty without actually holding a concursus or, at the least, conducting motion practice after discovery. This inverts the usual practice, in which venue is an issue resolved early in litigation, usually without resort to extensive fact-finding, and preferably without determining ultimate issues of liability. Cf. Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 441 (explaining that courts should not determine ultimate liability issues when ruling on personal jurisdiction). Should future proceedings reveal that all three boats are indeed at fault, the better remedy, as Miller Marine notes, is to require a corresponding increase in the amount of the limitation fund and the posting of an additional bond.

Walker's position also creates a strange ambiguity in the venue provision of Supplemental Rule F(9), specifically the clause stating that, where the vessel has not been attached and no suit has yet been filed, "the proceedings may be had in the district in which the vessel may be." Walker's position – that the vessel referenced in Rule F(9) consists of every vessel at fault for the injury – renders this provision difficult to apply sensibly. One need only consider the circumstances of this case to see the problem. Miller Marine filed suit before Walker filed, and did so while the Megan T. Miller was berthed in Port Jefferson, here in the Eastern District. The papers do not disclose the location of the Erin Miller and Abigail Miller at the time Miller Marine filed suit. If we assume both boats were also berthed in Port Jefferson,

7

then Walker's agglomerated vessel would be within the Eastern District, and venue would be proper. However, if either boat was outside the district – at the facility in New Haven, for example – then the entire vessel would seemingly not be within the Eastern District. But if we conclude that this three-boat vessel, located on opposite ends of the Long Island Sound, "be" not in the Eastern District, we are faced with a difficult question: where is it? This is the point at which Walker's interpretation founders. Is the vessel simultaneously in both districts? If so, then venue would be proper in either district. Is the vessel in no district at all? If so, then, per Rule F(9), venue would be proper in any district, because "if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district." We need not belabor the point any further: Walker's construction of the word vessel, though perhaps defensible as an exercise in harmonious interpretation, invites metaphysical distinctions that complicate Rule F(9) beyond anything likely intended by its drafters. The Court holds that venue was properly laid in the Eastern District.

Walker is on much firmer footing, however, when he urges the Court to transfer the case to the District of Connecticut for convenience. For all intents and purposes, this is a single claimant case, which gives Walker an almost unqualified right to proceed in another forum.[2] And because Walker has filed suit in a second federal forum, rather than state court, the concerns that might justify this Court's continued jurisdiction over the case do not apply. Had Walker filed his suit in Connecticut state court, this Court might well have retained jurisdiction on the

---

[2] Although there are technically two claimants in this case, the Walkers have already stated in their answer to the petition, (Walker Answer 5, ECF No. 15), that Mrs. Walker will stipulate that Mr. Walker's claim has irrevocable priority. See Dammers, 836 F.2d at 756. Although this express concession might arguably be insufficient if the Walkers sought to proceed in state court, the District of Connecticut exercises admiralty jurisdiction, and plainly has the authority to hold the Walkers to this pleading should the results of a trial or concursus require it.

grounds that at least one federal forum should be available to hear Miller Marine's quintessentially federal claim. Moreover, the Court could not have relinquished jurisdiction in favor of state court proceedings absent the necessary stipulations. But that is not the situation presented. On the contrary, Miller Marine's right to litigate its claim for limitation of liability is fully protected in either forum, and the Eastern District is not inherently better suited to hear that claim than the District of Connecticut. The Court also notes that Walker has chosen to sue NRB in the District of Connecticut, but NRB is not a party in this action.[3] For these reasons, the Court concludes that it is inappropriate to prevent Walker from pursuing his claims in the District of Connecticut.

This leads us to a vexing procedural posture. Walker has brought his underlying tort claims in the District of Connecticut, while Miller Marine presses for a concursus here in the Eastern District. The District of Connecticut has stayed and administratively closed Walker's action without prejudice in deference to this Court's anti-suit injunction. But this Court simply cannot shut Walker out of the District of Connecticut without violating Walker's rights under the savings-to-suitors clause and his right to a jury trial. Complicating matters further, NRB is a party only in the District of Connecticut; consequently, a concursus before this Court would not dispose of the litigation in full. Conceivably the Court could lift its injunction (should Walker so move) and allow him to proceed on the merits of his tort claims in the District of Connecticut, followed by a concursus here on the remaining issues. Yet the merits of Walker's underlying tort claims appear to substantially overlap with at least two key factual issues in the concursus – Miller Marine's privity or knowledge, and Walker's contention that the limitation fund must be increased because all three vessels were at fault. If this case moved forward in two districts, the

---

[3] Although Miller Marine confidently asserts that NRB could and would successfully move to dismiss, the Court cannot be so sanguine at this stage of litigation.

9

potential for wasteful and duplicative proceedings could not be easily eliminated, nor could potentially thorny issues of res judicata.

When considering a motion to transfer venue for convenience, the possibility of consolidating related actions may be a significant factor: "[p]ermitting 'a situation in which two cases involving . . . the same issues are simultaneously pending in different district courts leads to a wastefulness of time, energy and money that 1404(a) was designed to prevent.'" See Smith v. City of New York, 950 F. Supp. 55, 59 (E.D.N.Y. 1996) (citing Continental Grain Co. v. Barge, 364 U.S. 19, 26 (1960)). That consideration is compelling here. The current posture is pointlessly inconvenient.

The only remaining question is which forum is better suited to hear the case, applying the usual venue transfer factors. "Some of the factors a district court is to consider are, inter alia: (1) the plaintiffs choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (citing Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp.2d 341, 343 (S.D.N.Y. 2002)).

Walker resides in Delaware, while Miller Marine is a corporate citizen of New York. The Court further assumes without deciding that Miller Marine is correct when it says that its corporate "nerve center" is here in New York. See Friscone v. Pepsico, Inc., 369 F. Supp. 2d 464, 470-71 (S.D.N.Y. 2006). Convenience of the parties therefore weighs slightly in favor of the Eastern District. However, as this Court has previously observed in the context of forum non conveniens, the trend of "admiralty law in particular has been away from according a talismanic

significance to the citizenship or residence of the parties." Penny v. United Fruit Co., 869 F. Supp. 122, 130 (E.D.N.Y. 1994) (quoting Alcoa S.S. Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 154 (2d Cir. 1980)). Accordingly, the Court affords no great weight to Miller Marine's New York citizenship. Nor does the Court see any clear advantage in either forum with respect to the location of documents, witnesses and other sources of proof.

Similarly, the Court accords no great weight to Miller Marine's choice of forum. In reaching this conclusion, we are influenced by the many courts that have subtly – and often not so subtly – criticized the Limitation Act. See generally Graydon S. Staring, The Roots and False Aspersions of Shipowner's Limitation of Liability, 39 J. Mar. L. & Com. 315, 315 (2008). Although we do not mean to join the "jeering section," see Id. at 332, we cannot help but notice the Act's anachronistic quality – even fifty years ago the Second Circuit, though acknowledging the Act's rationality, was openly contemplating its obsolescence. See Murray v. New York Central R.R. Co., 287 F.2d 152, 153 (2d Cir. 1961). Enacted in the mid-Nineteenth Century (with much older antecedents), the Act was designed to protect the financial interests of the then-nascent American shipping industry. Dennis J. Stone, The Limitation of Liability Act: Time to Abandon Ship?, 32 J. Mar. L. & Com. 317, 317 (2001). That objective appears quaint in light of the subsequent revolution in the use of the corporate form and the widespread adoption of liability insurance. The Act's defenders rightly stress that these protections are an imperfect substitute, but cannot dispel the notion that the limitation petitioner's ability to cap its total exposure in a maritime casualty to the value of the offending vessel constitutes a unique potential windfall, and plainly a tremendous advantage in litigation. The Court does not believe it appropriate to bolster this advantage further by extending to a limitation petitioner the full deference traditionally afforded to a civil plaintiff's chosen forum, not in what amounts to an

"inherently defensive" action. See In re Far Eastern Shipping Co., 460 F. Supp. 107, 109 (S.D.N.Y. 1978); Curtis Bay, 159 F.2d at 276 ("The privilege of limiting liability is not part of any doctrine of forum non conveniens.")

The Court does not hold that a petitioner's choice of forum should never carry any weight or that a claimant's choice of forum should necessarily displace it. But see Far Eastern Shipping, 460 F. Supp. at 109. Indeed, a petitioner's chosen forum may be ideally suited to marshal multiple claims from individuals in different districts. The court simply holds that, when a petition arises from a single incident injuring a single claimant, the vessel owner should not be able to supplement its considerable advantages under the Limitation Act by claiming the deference we usually afford to a civil plaintiff's choice of forum.

The Court concludes that the dispositive factor here is the location of the incident: the port facility in New Haven. There is a strong local interest in adjudicating local matters. See, e.g., Hamilton v. Accu-Tek, 47 F. Supp. 2d 330, 347 (E.D.N.Y. 1999) (citing In re Eastern Dist. Repetitive Stress Injury Lit., 850 F. Supp. 188, 195 (E.D.N.Y. 1994)). In addition, Walker's factual assertions raise questions of premises liability, which further implicate local interests.

In summary, the Court concludes that this single claimant case should be heard in one forum for the convenience of all concerned, and further holds that the district in which the incident took place is the more appropriate forum. The motion to dismiss Miller Marine's petition is denied. The motion to transfer Miller Marine's petition is granted.

Dated: Brooklyn, New York  
September 27, 2013

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE  
United States District Judge